IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

NORTHPORT HEALTH SERVICES OF
ARKANSAS, LLC, d/b/a Covington Court Health
and Rehabilitation Center; et al.                                    PLAINTIFFS

v.                              No. 2:17-CV-02128

MARK WESLEY POSEY, Individually and as
Special Administrator of the Estate of Clyde Wesley
Posey, and on Behalf of the Wrongful Death Beneficiaries
of Clyde Wesley Posey                                                DEFENDANT

**OPINION AND ORDER**

Before the Court are Plaintiffs' motion for summary judgment (Doc. 37), brief in support of their motion (Doc. 38), and statement of facts in support of their motion (Doc. 39). Defendant filed a response in opposition and counter-motion for summary judgment (Doc. 40), a brief in support (Doc. 41), and a response to Plaintiffs' statement of facts (Doc. 42). Plaintiffs filed a reply (Doc. 44) in support of their motion for summary judgment. Plaintiffs also filed a response (Doc. 45) to Defendant's counter-motion for summary judgment and a brief in support (Doc. 46). Defendant filed a reply (Doc. 47) in support of his counter-motion for summary judgment.

For the reasons stated herein, the Court will GRANT IN PART and DENY IN PART Plaintiffs' motion for summary judgment (Doc. 37) and DENY Defendant's counter-motion for summary judgment (Doc. 40).

I.  **Background**

Clyde Wesley Posey ("Clyde") was admitted to Northport Health Services of Arkansas, LLC d//b/a Covington Court Health and Rehabilitation Center ("Covington Court") on September

1

2, 2004. In connection with his admission, Clyde and his son, Matt Posey ("Matt"), signed an admission agreement, which included an arbitration agreement. (Doc. 1-2).

Section 8 of the admission agreement, which contains the arbitration agreement, states that "THE PARTIES ACKNOWLEDGE THAT BY ENTERING INTO THIS ARBITRATION AGREEMENT, THEY ARE GIVING UP THEIR RIGHT TO HAVE ANY SUCH DISPUTE DECIDED IN A COURT OF LAW BEFORE A JUDGE OR JURY, AND INSTEAD ARE ACCEPTING THE USE OF ARBITRATION."

Clyde signed the admission agreement as the "Resident" and Matt signed the agreement as Clyde's "Responsible Party." The admission agreement defines Responsible Party, in part, as a person "who agrees to assist [Covington Court] in providing for [the Resident's] health, care, and maintenance." Further, Section 2 of the admission agreement states that "[t]he Responsible Party represents to the Facility that he or she manages, uses, directs or controls funds or assets which may be used to pay for Resident's Facility charges and/or that he or she tends to make decisions for or otherwise act on behalf of Resident."

Additionally, Appendix D of the admission agreement, an arbitration consent form, reiterates that the signatories consent to the arbitration agreement contained in Section 8. Clyde signed Appendix D as the Resident and Matt signed Appendix D as Clyde's Responsible Party.

After Clyde's death, Mark Wesley Posey ("Mark"), acting as special administrator of Clyde's estate, filed suit against Plaintiffs in the Circuit Court of Sebastian County, Arkansas, alleging negligence and other claims arising from Clyde's stay at Covington Court. Plaintiffs filed this suit seeking to compel arbitration of Defendant's state court claims and to enjoin state court proceedings on Defendant's claims.

## II. Legal Standard for Summary Judgment

When a party moves for summary judgment, it must establish both the absence of a genuine dispute of material fact and that it is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986); *Nat'l Bank of Commerce of El Dorado, Ark. v. Dow Chem. Co.*, 165 F.3d 602, 606 (8th Cir. 1999). In order for there to be a genuine issue of material fact, the nonmoving party must produce evidence "such that a reasonable jury could return a verdict for the nonmoving party." *Allison v. Flexway Trucking, Inc.*, 28 F.3d 64, 66–67 (8th Cir. 1994) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Only facts "that might affect the outcome of the suit under the governing law" need be considered. *Anderson*, 477 U.S. at 248. "[T]he non-movant must make a sufficient showing on every essential element of its claim on which it bears the burden of proof." *P.H. v. Sch. Dist. of Kan. City, Mo.*, 265 F.3d 653, 658 (8th Cir. 2001). Facts asserted by the nonmoving party "must be properly supported by the record," in which case those "facts and the inferences to be drawn from them [are viewed] in the light most favorable to the nonmoving party." *Id*. at 656–57.

## III. Analysis

The only issue before the Court on summary judgment is whether the arbitration agreement included in the admission agreement is valid and enforceable.

Whether a valid arbitration agreement has been entered into is a question of law, controlled by the applicable state contract law. *Davidson v. Cingular Wireless LLC*, 2007 WL 896349 at *2 (E.D. Ark. Mar. 23, 2007). Arkansas law provides that the essential elements of a contract are: (1) competent parties; (2) subject matter; (3) legal consideration; (4) mutual agreement; and (5) mutual obligations. *Id.*

Defendant argues that the arbitration agreement is not a valid contract because (1) the agreement lacks mutual assent because no representative of Covington Court signed it; (2) the arbitration agreement lacks mutual assent because Clyde did not have the mental capacity to enter it and Matt did not have a power of attorney to do so for him; and (3) the arbitration agreement lacks mutuality of obligation because, by reserving the right to litigate billing or collection disputes up to $25,000, Covington Court excluded from arbitration the only likely claim it might have against a resident. The Court will address each of these arguments in turn.

### A. Lack of Signature

Defendant argues that the arbitration agreement lacks mutual assent because a representative of Covington Court did not sign the agreement. Plaintiffs acknowledge that that there is no signature of a Covington Court representative on the admission agreement, but argue that by accepting Clyde as a resident, Plaintiffs manifested their assent and acquiesced to the admission agreement's terms, including the agreement to arbitrate.

Defendant relies on *Pine Hills Health and Rehabilitation, LLC v. Matthews*, 431 S.W.3d 910 (Ark. 2014), to support his argument that the arbitration agreement lacks mutual assent. In *Matthews*, the Arkansas Supreme Court found that an arbitration agreement that was not signed by a nursing home representative did not establish that the nursing home manifested its assent to the arbitration agreement. *Id.* at 8. However, this case is factually distinguishable from *Matthews*. In that case, the court noted that the nursing home's reliance on the admission agreement did "not illuminate whether [the nursing home] also manifested its assent to the Arbitration Agreement" because the admission agreement was "a separate agreement signed by a [nursing home] representative two days after [the responsible party] had signed the Arbitration Agreement." *Id.* In contrast, the arbitration agreement here is part of the admission agreement. Section 8 of the

4

admission agreement contains the arbitration agreement and Appendix D of the admission agreement is an arbitration consent form.  Accordingly, if the Court finds that Plaintiffs manifested their assent to the admission agreement, the Court must find that Plaintiffs also manifested their assent to the arbitration agreement.

The court in *Matthews* further noted that a "written contract, not required to be in writing, is valid if one of the parties signs it and the other acquiesces therein." *Id.* at 7 (citation omitted). By offering the admission agreement and by accepting Clyde as a resident, Plaintiffs clearly acquiesced to the admission agreement's terms, including the arbitration requirement.  The Court finds that this "objective indicator[] of agreement" demonstrates that Plaintiffs "manifested [their] assent to the contract." *Id.*  Accordingly, a representative of Covington Court was not required to sign the admission agreement to demonstrate mutual assent.

### B.     Third-Party Beneficiary

Defendant argues that the arbitration agreement lacks mutual assent because Clyde did not have the mental capacity to enter into the agreement and Matt did not have a power of attorney for Clyde.  Plaintiffs respond that even if Clyde was mentally incompetent, the signature of Matt binds Clyde and his estate pursuant to the third-party beneficiary doctrine.

This Court has previously applied third-party beneficiary analysis to enforce an arbitration agreement against a nursing home decedent's estate where a valid arbitration agreement existed between the Responsible Party and the facility.  *Northport Health Services of Arkansas, LLC v. Community First Trust Co.*, 2014 WL 217893 at *8 (W.D. Ark. Jan. 21, 2014).  For Clyde's estate to be bound to arbitration as a third-party beneficiary, three elements must be met: (1) Clyde was not a party to the contract; (2) a valid contract existed between Covington Court and Matt in his individual capacity; and (3) the contract between the Covington Court and Matt was made for

5

Clyde's benefit. *Id.* For purposes of this analysis, the Court will assume—without finding—that Clyde lacked capacity to contract. Therefore, the Court must determine whether a valid contract existed between Covington Court and Matt in his individual capacity and whether the contract was made for Clyde's benefit.

In making this determination, the Court first notes that Matt signed the arbitration consent form in Appendix D which unambiguously states that the signatories consent to the arbitration agreement. Matt appears to have signed the form on his own behalf as the Responsible Party and no evidence has been presented that he was attempting to sign the agreement on Clyde's behalf. Accordingly, a valid contract existed between Covington Court and Matt in his individual capacity.[1]

Next, the Court notes that the admission agreement defines Responsible Party, in part, as a person "who agrees to assist [Covington Court] in providing for [the Resident's] health, care, and maintenance." The admission agreement also states that "[t]he Responsible Party represents to the Facility that he or she manages, uses, directs or controls funds or assets which may be used to pay for Resident's Facility charges and/or that he or she tends to make decisions for or otherwise act on behalf of Resident." This language indicates that Matt, by voluntarily signing the contract as the Responsible Party, entered the admission agreement for the purpose of assisting Covington Court in providing for his father's health, care, and maintenance.

---

[1] Defendant relies on *Pine Hills Health & Rehabilitation LLC v. Talley*, 2018 Ark. App. 131, to argue that there was not a valid contract between Matt and Covington Court. However, this case is factually distinguishable. In *Talley*, the arbitration agreement "only allow[ed] for the resident or the responsible party to be a party to the agreement and [the resident's] name [was] listed." In contrast, the first page of the admission agreement in this case states that "[t]his Admission Agreement . . . states the terms and conditions agreed by [Resident], Clyde Posey, [Responsible Party], Matt Posey, and [Covington Court]." This language indicates that Matt was a party to the agreement.

Accordingly, Matt entered into a valid contract for Clyde's benefit, and Defendant is bound as a third-party beneficiary to the arbitration agreement.

C.     **Reservation of Right to Litigate**

Defendant argues that the arbitration agreement lacks mutuality of obligation because Plaintiffs excluded from arbitration the only likely claim they might have against a resident by reserving the right to litigate billing or collection disputes up to $25,000. The Court first notes that Defendant mischaracterizes this clause of the admission agreement in his brief. The admission agreement states that the arbitration agreement "shall not govern . . . any claim or dispute involving solely a monetary claim in an amount less than $25,000." The admission agreement does not specify that this exception to the arbitration agreement is limited to billing or collection disputes.

This Court previously upheld an arbitration agreement with a similar monetary threshold. *Diversicare Leasing Corp. v. Nowlin*, 2011 WL 5827208 (W.D. Ark. Nov. 18, 2011). In *Nowlin*, the arbitration agreement provided that "all claims in excess of $15,000.00, exclusive of interest, costs, and attorney's fees, are to be resolved exclusively by arbitration." *Id.* at *1. In finding that the arbitration agreement did not lack mutuality of obligation, the Court performed the following analysis:

> [I]t is certainly conceivable that [the facility] could have had a claim against [the resident] or her estate that would have compelled them to arbitrate. [The estate's] claim that the only possible cause of action against [the resident] would be for debt collection and that [the resident's] debts could not exceed $15,000 are not plausible. There was no guarantee at the time of the agreement that Medicare and Medicaid would continue to fund [the resident's] care. If this funding were to cease, it is possible that a debt collection claim could have easily exceeded $15,000, thereby forcing [the facility] to arbitrate. Furthermore, . . . other causes of action against [the resident] were possible at the time the Agreement was signed, such as a claim arising from property damage.

7

*Id.* at *4. The Court finds that the same analysis applies to the $25,000 arbitration threshold in this case. Accordingly, the arbitration agreement did not lack mutuality of obligation.

**IV. Conclusion**

The Court will direct the parties to proceed to arbitration of the dispute in accordance with the terms of the arbitration provisions in the admission agreement. The Court does not, however, find it either necessary or appropriate to enjoin the action pending in the Circuit Court of Sebastian County, Arkansas. Principles of comity counsel against such action.

IT IS THEREFORE ORDERED that Plaintiffs' motion for summary judgment (Doc. 37) is GRANTED IN PART and DENIED IN PART. The motion is GRANTED insofar as it seeks to compel arbitration, and the Court hereby directs the parties to proceed to arbitration of their dispute in accordance with the arbitration provisions of the admission agreement. The motion is DENIED insofar as it seeks to enjoin the proceedings between the parties in the Circuit Court of Sebastian County, Arkansas. IT IS FURTHER ORDERED that Defendant's counter-motion for summary judgment (Doc. 40) is DENIED. Plaintiffs' complaint to compel arbitration (Doc. 1) is hereby DISMISSED WITHOUT PREJUDICE.

IT IS SO ORDERED this 15th day of June, 2018.

/s/ P. K. Holmes, III
P.K. HOLMES, III
CHIEF U.S. DISTRICT JUDGE